**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **DAVID STUA,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | |
| | § | **C.A. NO. 9:26-CV-00419-MJT-CLS** |
| **ALBERT J. CHARANZA, JR. AND** | § | |
| **DOUG CONN,** | § | |
| | § | |
| ***Defendants*.** | | |

**DEFENDANT DOUG CONN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**


Christopher B. Gilbert
**THOMPSON & HORTON LLP**
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6744
Facsimile: (713) 583-8884
cgilbert@thompsonhorton.com

**ATTORNEYS FOR DEFENDANT DOUG CONN**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

I. OVERVIEW .......... 1

A. Nature and Stage of the Proceedings .......... 1

II. STATEMENT OF THE ISSUES .......... 2

III. STANDARD OF REVIEW .......... 2

IV. ARGUMENT AND AUTHORITY .......... 3

A. The Court should dismiss Stua's claims against Conn as untimely .......... 3

B. Stua fails to plausibly plead a RICO claim under either 18 U.S.C. § 1962(c) or 18 U.S.C. § 1962(d), at least as to Conn .......... 6

1. Stua has failed to plead a "pattern of racketeering", as that term is defined by RICO .......... 6

2. Stua has failed to plead facts that would show the existence of an enterprise, as that term is defined by RICO .......... 10

3. Stua has failed to assert a valid conspiracy claim under RICO .......... 14

C. Stua's Section 1983 claims against Conn are barred by qualified immunity .......... 15

IV. CONCLUSION .......... 18

CERTIFICATE OF SERVICE .......... 19

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007)........................................................................6, 10

*Agency Holding Corp. v. Malley-Duff & Assc., Inc.*, 483 U.S. 143 (1987)....................................4

*Alexander v. Eeds*, 392 F.3d 138 (5th Cir. 2004) .........................................................................16

*Allstate Ins. Co. v. Benhamou*, 190 F.Supp.3d 631 (S.D. Tex. 2016) ...........................................10

*Allstate Ins. Co. v. Plambeck*, ___ F.3d ___, 2015 WL 5472433 (5th Cir. 2015)..................11, 13

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...............................................................................16

*Ashcroft v. Al-Kidd*, 131 S.Ct. 2074 (2011).....................................................................................16

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ........................................................................................3, 16

*Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438 (5th Cir. 1987)....................................11

*Babb v. Dorman*, 33 F.3d 472 (5th Cir. 1994)..................................................................................16

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988)...................................................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).........................................................................2, 3

*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995) .........................................................2

*Bradley v. Phillips Petroleum Co.*, 527 F.Supp.2d 625 (S.D. Tex. 2007) ....................................3

*Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453 (5th Cir. 1991)........................................11

*Carswell v. Camp*, 54 F. 4th 307 (5th Cir. 2022).............................................................................16

*Ciminelli v. United States*, 598 U.S. 306 (2023)...............................................................................7

*Clark v. National Equities Holdings, Inc.*, 561 F.Supp.2d 632
(E.D. Tex. 2006) ..........................................................................6, 7, 9, 10, 11, 12

*Crosswell v. Martinez*, 120 F.4th 177 (5th Cir. 2024)...........................................................10, 12

*Crowe v. Henry*, 43 F.3d 198 (5th Cir. 1995).........................................................6, 10, 11, 12, 13

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241 (5th Cir. 1988) ................................11

*Dura Pharms.* v. *Broudo,* 544 U.S. 336 (2005) .......... 3

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993) .......... 2

*Gonzalez v. Bank of Amer.*, 2011 WL 13261985 (S.D. Tex. 2011) .......... 11

*Grant v. Amazon.com Servs., L.L.C.*, 2026 WL 1836443 (5th Cir. June 25, 2026) .......... 3

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982) .......... 15

*Hearn v. McCraw*, 856 F. App'x 493 (5th Cir. 2021) .......... 3

*Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534 (1991) .......... 15

*In re Burzynski*, 989 F.2d 733 (5th Cir. 1993) .......... 10

*In re Sunpoint Sec., Inc*, 350 B.R. 741 (Bankr. E.D. Tex. 2006) .......... 14

*Kelly* v. *United States*, 140 S.Ct. 1565 (2020) .......... 7

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) .......... 5, 6

*Kopecki v. City of Corpus Christi*, 2007 WL 320975 (S.D. Tex. Jan. 30, 2007) .......... 4

*Kovacic v. Villareal*, 628 F.3d 209 (5th Cir. 2010) .......... 16, 18

*Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521 (5th Cir. 1994) .......... 2

*Lewis v. Danos*, 83 F.4th 948 (5th Cir. 2023) .......... 4, 9

*Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797 (7th Cir. 2008) .......... 5, 6, 13

*Love v. Nat'l Med. Enters.*, 230 F.3d 765 (5th Cir. 2000) .......... 4

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .......... 15

*Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779 (5th Cir. 2020) .......... 9

*Moon v. City of El Paso*, 906 F.3d 352 (5th Cir. 2019) .......... 3, 4

*Mossey v. City of Galveston,* 94 F.Supp.2d 793 (S.D. Tex. 2000) .......... 15

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015) .......... 14

*Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926 (5th Cir. 2002) .......... 14

*Norman v. Apache Corp.*, 19 F.3d 1017 (5th Cir. 1994) ....................2

*North Cent. Watt Count, Inc. v. Watt Count Engineering Systems, Inc.*, 678 F.Supp. 1305 (M.D. Tenn. 1988) ....................13

*Pearson v. Callahan*, 555 U.S. 223 (2009) ....................16

*Rotella v. Wood*, 528 U.S. 549 (2000) ....................4

*Series 17-03-615 v. Teva Pharms. USA, Inc.*, 785 F. Supp. 3d 904 (D. Kan. 2025) ....................7, 9

*Siegert v. Gilley*, 500 U.S. 226 (1991) ....................16

*Simon v. Value Behavioral Health, Inc.,* 208 F.3d 1073 (9th Cir.2000) ....................14

*Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673 (5th Cir. 2007) ....................3

*State Farm Mut. Auto. Ins. Co. v. Giventer*, 212 F.Supp.2d 639 (N.D. Tex. 2002) ....................11

*Troyer v. Boomtown, LLC*, 2004 WL 2984364 (E.D. La. 2004) ....................12

*United States v. Auguste*, 2025 WL 1249649 (11th Cir. 2025), *cert. denied,* 146 S. Ct. 340 (2025) ....................7, 8

*United States v. Hild*, 147 F.4th 103 (2d Cir. 2025), *cert. denied,* 224 L. Ed. 2d 528 (2026) .................... 7

*United States v. Onyeri*, 996 F.3d 274 (5th Cir. 2021) ....................14

*United States v. Snyder,* 930 F.2d 1090 (5th Cir. 1991) ....................8

*United States v. Stephens*, 964 F.2d 424 (5th Cir. 1992) ....................8

*United States v. Watkins*, 42 F.4th 1278 (11th Cir. 2022) ....................8

*Walker v. Beaumont ISD*, 938 F.3d 724 (5th Cir. 2019) ....................12

*Wallace v. Kato*, 549 U.S. 384 (2007) ....................3

*Whelan v. Winchester Production Co.*, 319 F.3d 225 (5th Cir.2003) ....................7

*Wicks v. Miss. State Employment Servs.*, 41 F.3d 991 (5th Cir. 1995) ....................16

*Wilson v. Garcia*, 471 U.S. 261 (1985) ....................15

*Winstead v. Box*, 2011 WL 1057558 (5th Cir. 2011) ....................16

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,* 90 F.3d 118 (5th Cir.1996) .....10

*Zastrow v. Houston Auto Imports Greenway Ltd*., 789 F.3d 553 (5th Cir. 2015) .....7, 10

**<u>Statutes</u>**

2A *Moore's Federal Practice* § 12.07 [2.-5] .....2

18 U.S.C. § 1341 .....9

18 U.S.C. § 1343 .....7, 9

18 U.S.C. § 1951 .....4, 5, 8

18 U.S.C. § 1961(5) .....7

18 U.S.C. § 1962 .....*passim*

18 U.S.C. § 1962(c) .....6, 13, 14

18 U.S.C. § 1962(d) .....6, 14

42 U.S.C. § 1983 .....2, 15

FED. R. CIV. P. 8(a)(2) .....23

FED. R. CIV. P. 12(b)(6) .....1, 2, 6, 15, 18

TEX. CIV. PRAC. & REM. CODE § 16.003 .....3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **DAVID STUA,** *Plaintiff,* | § | |
| | § | |
| **V.** | § | **C.A. NO. 9:26-CV-00419-MJT-CLS** |
| | § | |
| **ALBERT J. CHARANZA, JR. AND DOUG CONN,** | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT DOUG CONN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to FED. R. CIV. P. 12(b)(6), Defendant Doug Conn files this Motion to Dismiss in response to Plaintiff's (corrected) Original Complaint (Dkt. 10), and would respectfully show the Court as follows:

## I. OVERVIEW

### A. Nature and Stage of the Proceedings

Plaintiff David Stua filed this lawsuit on or about June 10, 2026. He asserts claims against Doug Conn, who at all times relevant was the Chief of Police for Angelina College, for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO") (Count I, Count II), and for deprivation of his rights under the First and Fourth Amendments to the United States Constitution (Count III), based mainly on his arrest on December 13, 2018 for approaching a minor on College grounds and asking if the minor wanted to see proof of his circumcision (or words to that effect). Stua's claims are egregiously time barred, he fails to plead a plausible RICO claim (for several reasons), and Conn is entitled to qualified immunity. Stua's claims against Conn should be dismissed as a matter of law.

## II. STATEMENT OF THE ISSUES

A. Whether Stua's Section 1983 and RICO claims against Conn should be dismissed, because they are untimely;

B. Whether Stua has properly pled claims for violation of RICO.

C. Whether Stua's Section 1983 claims against Conn are barred by qualified immunity; and

## III. STANDARD OF REVIEW

Dismissal of a lawsuit on the pleadings is proper where there is either (1) lack of a cognizable theory of recovery or (2) the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Phrased a different way, "a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). While the Court will accept the plaintiff's factual allegations as true, the factual allegations must exist; "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting 2A *Moore's Federal Practice* § 12.07 [2.-5] at 12-91). In addition, what must be alleged are <u>facts</u>: "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A

court can dismiss a complaint for failure to state a claim if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (quoting *Twombly*). "[A] plaintiff is obligated to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bradley v. Phillips Petroleum Co.*, 527 F.Supp.2d 625, 636 (S.D. Tex. 2007) (quoting *Twombly*). In *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), the Supreme Court held that Rule 8(a)(2) requires that "the well pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." *Id*. at 1950. Otherwise, a plaintiff with "a largely groundless claim" would be permitted to "simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *See Dura Pharms.* v. *Broudo,* 544 U.S. 336, 347 (2005).

## IV. ARGUMENT AND AUTHORITIES

### A. The Court should dismiss Stua's claims against Conn as untimely.

The Court should dismiss each of Stua's claims against Conn, because they are barred by the applicable statutes of limitations. "Because § 1983 does not provide a statute of limitations, courts borrow from state law." *Hearn v. McCraw*, 856 F. App'x 493, 495 (5th Cir. 2021) (per curiam) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). Specifically, courts typically "look to a state's statute of limitations for personal-injury torts" which, in Texas, is two years. *See id.* (citation omitted); *see also* TEX. CIV. PRAC. & REM. CODE § 16.003. The statute of limitations for Stua's First Amendment retaliation and Fourth Amendment unreasonable seizure claims, accordingly, is two years. Courts correctly, and frequently, dismiss claims filed outside of their applicable limitations period. *See Grant v. Amazon.com Servs., L.L.C.*, 2026 WL 1836443, at *4 (5th Cir. June 25, 2026) (per curiam) (defamation); *Moon v. City of El Paso*, 906 F.3d 352, 358–

59 (5th Cir. 2019) (due process); *Kopecki v. City of Corpus Christi*, 2007 WL 320975, at *1–7 (S.D. Tex. Jan. 30, 2007) (intentional infliction of emotional distress and Section 1983).

A civil RICO claim has a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assc., Inc.*, 483 U.S. 143, 156 (1987); *see also Lewis v. Danos*, 83 F.4th 948, 955 (5th Cir. 2023). The Fifth Circuit abides by the rules of injury discovery and separate accrual for RICO claims:

> Under the 'injury discovery' rule, a civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury" and, "[w]hen a pattern of RICO activity causes a continuing series of separate injuries, the 'separate accrual' rule allows a civil RICO claim to accrue for each injury when the plaintiff discovers, or should have discovered, that injury.

*Lewis*, 83 F.4th at 955 (citing *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 773 (5th Cir. 2000)). The "injury discovery rule" was approved by the Supreme Court in *Rotella v. Wood*, 528 U.S. 549 (2000).

Stua's constitutional claims against Conn in his individual capacity are based entirely on Conn's investigation leading to Sua's arrest on December 13, 2018 (Dkt. 10, ¶ 30) and "[c]ontemporaneous trespass warning" Conn issued (Dkt. 10, ¶ 31); a search conducted on December 13, 2018 (Dkt. 10, ¶ 22); monitoring of Stua's phone calls between December 12 and December 17, 2018 (Dkt. 10,¶ 36); and possibly testimony at a February 15, 2019 Examining Trial (Dkt. 10, ¶ 24). His RICO claims are based on the search warrant for Stua's Facebook page that Conn obtained on December 13, 2018 (Dkt. 10, ¶ 22), and the bond revocation report Conn submitted in December 2018 or January 2019 (Dkt. 10, ¶¶ 36-37) (*See generally* Dkt. 10, ¶ 59(b)). There are no allegations against or involving Conn that occurred after February 15, 2019.

There is one predicate act alleged to have occurred (arguably) within the four-year statute of limitations; when Charanza (not Conn) engaged in "Hobbs Act Extortion" under 18 U.S.C.

§ 1951 by going to Stua's jail cell on June 10, 2022 (exactly four years before this lawsuit was filed), and getting him to sign a plea deal when Charanza knew Stua was suffering from Bipolar Disorder and sleep deprivation. (Dkt. 10, ¶ 59(a)). But that act was committed by Charanza, not Conn, and as the Supreme Court has noted, "the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997); *see also id.* at 189 ("[T]he commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period.").

In many ways this case is similar to *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797 (7th Cir. 2008), where a property owner alleged that the Village of Lemont conspired with various officials and another landowner to prevent Limestone from developing its property outside the Village. The "predicate acts" at issue included failing to maintain a road necessary to access Limestone's property, and then supposedly stringing Limestone along by pretending to be interested in purchasing the property, so that Limestone would neither develop it nor sell it to anyone else. *Id.* at 800. All of these predicate acts occurred before 2002 and were clearly outside the four-year statute of limitations, since the lawsuit was filed in 2006. But there was one act in 2003: the Village published a statement in the newspaper by the mayor that they were going to create a park that contained some or most of Limestone's property – which Limestone alleged was intended to create the illusion that the Village already controlled that property, once again thwarting Limestone's ability to market its property. *Id.* Limestone argued that this one timely predicate act allowed it "to revive the time-barred predicate acts and thus obtain redress for the harm caused by them." *Id.* at 801. The Seventh Circuit disagreed, stating that "[i]f

Limestone wanted to include the old acts in its RICO suit, it had to sue by 2004." *Id*. at 802 (citing *Klehr*, 521 U.S. at 190).

As such, both Stua's Section 1983 constitutional claims and his RICO claims against Conn are untimely and should be dismissed.

**B. Stua fails to plausibly plead a RICO claim under either 18 U.S.C. § 1962(c) or 18 U.S.C. § 1962(d), at least as to Conn.**

Defendant Conn moves to dismiss Stua's RICO claims against him under FED. R. CIV. P. 12(b)(6). Stua alleges that Conn and Charanza have violated 18 U.S.C. § 1962(c) of the RICO Act, as well as the conspiracy provision in 18 U.S.C. § 1962(d).

Reduced to its simplest terms, 18 U.S.C. § 1962(c) states that:

> (c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity.

*Abraham v. Singh*, 480 F.3d 351, 354-55 (5th Cir. 2007); *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995); *Clark v. National Equities Holdings, Inc*., 561 F.Supp.2d 632, 637 (E.D. Tex. 2006). "These common elements teach that any RICO claim necessitates "1) a *person* who engages in 2) a *pattern of racketeering activity,* 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *Crowe*, 43 F.3d at 204; *see also Abraham*, 480 F.3d at 355. Stua has failed to even properly allege the second and third elements, and as such, his RICO claims fail – at least as to Conn – as a matter of law.

**1. Stua has failed to plead a "pattern of racketeering", as that term is defined by RICO.**

As noted above, Stua must plead a "pattern of racketeering activity." *Crowe*, 43 F.3d at 204. As this Court has previously held:

> A 'pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which

> occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.'

*Clark*, 561 F.Supp.2d at 637 (quoting *Whelan v. Winchester Production Co*., 319 F.3d 225, 229 n.4 (5th Cir.2003)). To establish a pattern of racketeering, plaintiffs must allege at least two predicate acts. *See* 18 U.S.C. § 1961(5); *see also Series 17-03-615 v. Teva Pharms. USA, Inc.*, 785 F. Supp. 3d 904, 945 (D. Kan. 2025). "Racketeering activity" means any of the predicate acts specified in 18 U.S.C. § 1961(1). *Zastrow v. Houston Auto Imports Greenway Ltd*., 789 F.3d 553, 559 (5th Cir. 2015).

Stua has failed to plead facts that would plausibly establish at least two predicate acts. The only predicate acts he accuses Conn of engaging in are two counts of wire fraud under 18 U.S.C. § 1343. *See* Dkt. 10, ¶ 59(b). To state a claim for mail or wire fraud, plaintiffs must plausibly allege a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses. The Supreme Court has recently held that "these statutes protect property rights only. Accordingly, the Government must prove not only that wire fraud defendants "engaged in deception," but also that money or property was "an object of their fraud."" *Ciminelli v. United States*, 598 U.S. 306, 312 (2023) (citing *Kelly* v. *United States*, 140 S.Ct. 1565, 1571 (2020)) (cleaned up); *see also United States v. Hild*, 147 F.4th 103, 114–15 (2d Cir. 2025), *cert. denied,* 224 L. Ed. 2d 528 (2026) ("the wire fraud statute requires a "scheme or artifice to defraud" with "money or property as an object of [the] fraud.""); *United States v. Auguste*, 2025 WL 1249649, at *4 (11th Cir. 2025), *cert. denied,* 146 S. Ct. 340 (2025) ("Thus, to prove that a defendant committed wire fraud, the government must prove—among other things—that "money or property was 'an object of [the defendant's] fraud.' ") Here, there are no allegations that Conn, by seeking a "fabricated search warrant" or by submitting a "false bond revocation report" (Dkt. 10, ¶ 59(b)),

sought to deprive Stua of money or property of any kind. Stua has thus failed to plausibly allege that Conn engaged in any predicate acts at all.

The only other predicate acts that Stua identifies are alleged to have been engaged in by Charanza – more than a year after any action by Conn – but with one possible exception, Charanza's alleged acts do not amount to predicate acts for purposes of RICO, either. Stua alleges that Charanza engaged in mail fraud under 18 U.S.C. § 1341 by mailing Stua 31 letters "designed to conceal the single-count plea offer and suppress the Plaintiff's written trial strategy." (Dkt. 10, ¶ 59(c)). But like the wire fraud claims, mail fraud would also require a showing that "money or property was an object of [Charanza's] fraud." *Auguste*, 2025 WL 1249649, at *4.[1] Stua claims that Charanza engaged in "Hobbs Act Extortion" under 18 U.S.C. § 1951 by going to his jail cell and getting him to sign a plea deal when he knew Stua was suffering from Bipolar Disorder and sleep deprivation (Dkt. 10, ¶ 59(a)) – but to establish an offense under the Hobbs Act, the Government must prove that: "(1) that the defendant induced a person to part with property; (2) the defendant acted knowingly and willfully by means of extortion; and (3) that the extortionate transaction delayed, interrupted, or adversely affected interstate commerce." *United States v. Stephens*, 964 F.2d 424, 429 (5th Cir. 1992) (citing *United States v. Snyder,* 930 F.2d 1090, 1093 (5th Cir. 1991)). Extortion is defined as "the wrongful taking by a public officer of money or property not due to the officer or the office." *Snyder,* 930 F.2d at 1093. Here, there are no facts pled that getting Stua to sign a plea deal, no matter how bad it may have been, deprived him of money or property, or impacted interstate commerce in any way. *See Stephens*, 964 F.2d 424, 428 ("By statutory definition, in order for the extortion to constitute a federal crime under the Hobbs

---

[1] *See Auguste*, 2025 WL 1249649, at *6 n.7 ("That the scheme in *Schmitz* involved mail fraud instead of wire fraud is immaterial. For "[a]side from the means by which a fraud is effectuated, the elements of mail fraud and wire fraud are identical.") (citing *United States v. Watkins*, 42 F.4th 1278, 1284 (11th Cir. 2022))".

Act, some connection must be established between the extortionate conduct itself and interstate commerce.") Mailing letters to Stua and getting him to sign a plea deal are not predicate acts for purposes of a RICO claim.

This leaves only the wire fraud allegation that Charanza electronically submitted false billing vouchers (Dkt. 10, ¶ 59(b)) – where at least Charanza allegedly ought to improperly obtain property or money. The problem for Stua is, Charanza did not seek to obtain property or money *from Stua*. A RICO claim includes a causation requirement, such that the "plaintiff must demonstrate that the alleged [RICO] violation 'led directly' to the injuries." *Lewis*, 83 F.4th at 955 (citing *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784-85 (5th Cir. 2020)). Stua himself was not harmed by any fraudulent attorney billing vouchers that Charanza may have submitted to the State. As the *Lewis* Court similarly noted in rejecting a predicate act claim:

> Predicate Acts - 18 U.S.C. §§ 1341, 1343 (mail fraud and wire fraud): As for the alleged mail fraud and wire fraud, Lewis did not rely on misrepresentations from Defendants to her detriment. Nor was she directly involved in any of the alleged mails or wires containing misrepresentations. The one exception is Lewis's receipt of the final Title IX Investigation report, but she fails to allege how simply receiving such a report led directly to her property and professional damages. Even when accepted as true, those predicate acts proximately caused injury to others, not to Lewis.

*Lewis*, 83 F.4th at 957. The billing voucher allegation fails the causation element of the predicate act. Also, even if it counted, because this is a single act Stua can no longer show the *two* predicate acts required to establish a pattern of racketeering. *Clark*, 561 F.Supp.2d at 637; *Series 17-03-615*, 785 F. Supp. 3d at 945; 18 U.S.C. § 1961(5).

In this case, at most, Conn and Charanza are alleged to have been involved in different stages of the same criminal prosecution against Stua. The Fifth Circuit has also held that "[i]t is unnecessary to delve into the arcane concepts of a closed-end or open-ended continuity under RICO in cases where alleged RICO predicate acts are part and parcel of a single, otherwise lawful

transaction, for in such cases, a 'pattern of racketeering activity' has not been shown." *Abraham*, 480 F.3d at 354-55 (citing *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,* 90 F.3d 118, 123 (5th Cir.1996)). Here, whether Stua likes it or not, Conn and Charanza were involved in a lawful criminal prosecution of Stua. In two cases, the Fifth Circuit has held that acts related to the prosecution or defense of a lawsuit do not constitute racketeering for purposes of RICO. *See*, *e.g*., *Zastrow*, 789 F.3d at 561 ("We have held that, where all of the alleged predicate acts took place in the context of defending a lawsuit, the unlawful conduct 'did not constitute or threaten long-term criminal activity.'"); *In re Burzynski*, 989 F.2d 733, 742–43 (5th Cir. 1993) (dismissing civil RICO claims because multiple acts of alleged mail and wire fraud were committed in an "otherwise lawful" defense of a lawsuit that was "now over"). To the extent Stua bases his RICO claims on his state prosecution, such acts would not constitute racketeering for RICO purposes under *Zastrow* and *Burzynski.*

**2. Stua has failed to plead facts that would show the existence of an enterprise, as that term is defined by RICO**.

"A plaintiff asserting a RICO claim must allege the existence of an enterprise. A RICO enterprise can be either a legal entity or an association-in-fact." *Crowe*, 43 F.3d at 204; *Clark*, 561 F.Supp.2d at 638. "In order to avoid dismissal for failure to state a RICO claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise." *Allstate Ins. Co. v. Benhamou*, 190 F.Supp.3d 631, 648 (S.D. Tex. 2016); *see also Crosswell v. Martinez*, 120 F.4th 177, 184 (5th Cir. 2024) ("[A] RICO plaintiff must plead specific facts, not mere conclusory allegations, which establish the enterprise."). In this case, since the "Angelina Retaliation and Fraud Enterprise" (as Stua has termed it) is not a legal entity, he is by necessity alleging an association-in-fact. As the Fifth Circuit has held:

> To establish an association-in-fact enterprise, a plaintiff must "show 'evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit.'

*Crowe*, 43 F.3d at 205 (quoting *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 440 (5th Cir. 1987)). "This formulation of an association-in-fact enterprise incorporates the notion of continuity." *Id.* at 205 (citing *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991)).

The biggest problem with Stua's alleged "enterprise" is that it appears to be two people who were involved at either end of his criminal prosecution – but who are not connected by anyone or anything pled or identified in the middle. Conn is alleged to have investigated and arrested Stua in December 2018 and January 2019. Charanza is not alleged to have been hired to represent Stua until June 9, 2020. (Dkt. 10, ¶ 43). There are no factual allegations that Conn and Charanza did anything together. There is nothing to bridge what Conn did in 2018/19 with what Charanza supposedly started doing in mid-2020. Conn and Charanza weren't even on the same sides of the prosecution. "Each party's conducting of its own affairs is not … consensual decision making." *Gonzalez v. Bank of Amer.*, 2011 WL 13261985, at *7 (S.D. Tex. 2011).

The Fifth Circuit "has determined that an 'association-in-fact enterprise 1) must have an existence separate and apart from the pattern of racketeering, 2) must be an ongoing organization and 3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure.'" *Crowe*, 43 F.3d at 205 (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988)); *see also Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015); *Clark*, 561 F.Supp.2d at 638; *State Farm Mut. Auto. Ins. Co. v. Giventer*, 212 F.Supp.2d 639, 650 (N.D. Tex. 2002) ("Aside from the commission of the alleged predicate acts, there appears to be nothing which binds the association together."). Because membership in the

alleged enterprise is defined solely by a person's alleged illegal acts against Stua, Plaintiff has failed to allege an enterprise "existence separate and apart from the pattern of racketeering." *Crowe*, 43 F.3d at 205. *See also Crosswell*, 120 F.4th at 185; *Walker v. Beaumont ISD*, 938 F.3d 724, 738 (5th Cir. 2019).

Failing to allege that the "Conspiracy" exists separate and apart from the predicate acts of racketeering was fatal to the plaintiff's claims in this Court's decision in *Clark*:

> Clark has failed to allege that the enterprise exists separate and apart from the pattern of racketeering. Clark was required to plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts.

*Clark*, 561 F.Supp.2d at 638 (citing *Troyer v. Boomtown, LLC*, 2004 WL 2984364, *8 (E.D. La. 2004)). As this Court noted:

> Aside from Clark's conclusory allegation that the association-in-fact enterprise exists separate and apart from the pattern of racketeering, Clark failed to specifically plead facts showing that the association exists for purposes other than simply to commit the predicate acts. Furthermore, '[i]f the association has as its *raison d'etre* a single, discrete goal toward which all its energies are directed, the association is not a RICO enterprise.'

*Id.* at 638 (quoting *Troyer,* 2004 WL 2984364 at *8). The Court also found significant that "Clark has failed to establish that the enterprise's members function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Clark*, 561 F.Supp.2d at 639. Because Clark failed to show that the enterprise operated with a unified decision-making structure, or that the enterprise even had a structure, this Court found that "Clark failed to satisfy the first and third elements of an association-in-fact enterprise; therefore, the court finds that there is no enterprise. Since Clark failed to allege the existence of an enterprise as required to maintain a RICO claim, Clark's RICO claims against all of the Defendants must fail as a matter of law." *Id.* at 639 (internal quotations omitted). Likewise, Stua has not alleged the existence of an enterprise with any sort of

structure or unified decision-making structure, or one that exists "separate and apart from the pattern of racketeering." *Crowe*, 43 F.3d at 205. Accordingly, Stua's RICO claims fail as a matter of law.

Again, this case is very similar to *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797 (7th Cir. 2008), where a property owner alleged that the Village of Lemont conspired with various officials and another landowner to prevent Limestone from developing its property outside the Village. In deciding whether the one timely predicate act satisfied RICO, the Seventh Circuit held that the alleged conspiracy of the Village and related entities did not satisfy the enterprise requirement, because it did not have "some enterprise-like structure":

> Nowhere in the complaint does one find anything to indicate a structure of any kind. There is no reference to a system of governance, an administrative hierarchy, a joint planning committee, a board, a manager, a staff, headquarters, personnel having differentiated functions, a budget, records, or any other indicator of a legal or illegal enterprise.

Id. at 804. The RICO claim therefore failed as a matter of law.

Even if Stua has alleged a potential RICO enterprise generally, he has failed to allege facts that would show that Conn "conduct[ed] or participat[ed], directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c); *see also Plambeck*, 802 F.3d at 673. "A pattern of racketeering activity does not, by itself, necessarily show that an enterprise exists." *Plambeck*, 802 F.3d at 673. The plaintiff "must prove more than the existence of an enterprise which affects interstate commerce. It must also prove that each individual defendant participated in the conduct of that enterprise's affairs through a pattern of racketeering." *North Cent. Watt Count, Inc. v. Watt Count Engineering Systems, Inc.*, 678 F.Supp. 1305, 1316 (M.D. Tenn. 1988). Stua has failed to allege facts that would show that Conn personally engaged in predicate acts of racketeering, or "conducted and participated" in any "enterprise" against Stua.

### 3. Stua has failed to assert a valid conspiracy claim under RICO.

Stua's failure to assert a viable substantive RICO claim under Subsection (c) of § 1962 negates any cause of action under the RICO conspiracy section. *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) ("Since North Cypress failed to properly plead a claim under §§ 1962(a), (b), or (c), it correspondingly failed to properly plead a claim under § 1962(d)."); *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002) ("The failure to plead the requisite elements of either a § 1962(a) or a § 1962(c) violation implicitly means that [Nolen] cannot plead a conspiracy to violate either section."). As the Eastern District Bankruptcy Court noted in *In re Sunpoint Sec., Inc*, 350 B.R. 741 (Bankr. E.D. Tex. 2006):

> [T]he Fifth Circuit has clearly required that, to succeed on a statutory civil conspiracy theory under § 1962(d), a plaintiff must be able to plead and prove a violation of a provision of subsection (a), (b), or (c) of § 1962. *Nolen v. Nucentrix Broadband Networks Inc.,* 293 F.3d 926, 930 (5th Cir.2002) ["The failure to plead the requisite elements of either a § 1962(a) or § 1962(c) violation implicitly means [the plaintiff] cannot plead a conspiracy to violate either section." (quoting *Simon v. Value Behavioral Health, Inc.,* 208 F.3d 1073, 1084 (9th Cir.2000)) ]. In essence, to prove a common law civil conspiracy, any actionable wrongful act will do, but to prove a civil conspiracy to violate the RICO statute, the necessary wrongful act must be a violation of the RICO statute. Because CNB is entitled to summary judgment on Plaintiffs' claims under § 1962(a) and (c), it is also entitled to summary judgment on Plaintiffs' claims under § 1962(d).

*Id*. at 751. Because Conn is entitled to dismissal of Stua's claims under § 1962(c), he is also entitled to dismissal of Stua's claims under § 1962(d).

Even if the lack of a Section 1962(c) violation does not doom Stua's RICO conspiracy claim, he has failed to allege facts that would plausibly show a conspiracy. "The elements of a RICO conspiracy are: (1) an agreement between two or more people to commit a substantive RICO offense; and (2) knowledge of and agreement to the overall objective of the RICO offense." *United States v. Onyeri*, 996 F.3d 274, 280 (5th Cir. 2021). As discussed above, there are no facts pled

that would plausibly suggest that Coon and Charzana conspired with each other – or Conn with anyone else – to do anything wrong, and certain not to "commit a substantive RICO offense". Stua's conspiracy claim fails on its merits.

### C. Stua's Section 1983 claims against Conn are barred by qualified immunity.

Conn moves to dismiss Stua's Section 1983 claims against him under FED. R. CIV. P. 12(b)(6) (to the extent they are not dismissed as untimely). Stua seeks damages for alleged violations of the First and Fourth Amendments pursuant to 42 U.S.C. § 1983. Section 1983 creates no substantive rights, but merely provides a damages remedy for the deprivation of existing constitutional or federal statutory rights. *See Wilson v. Garcia*, 471 U.S. 261, 278 (1985).

Qualified immunity shields a government official from civil liability for damages based on the performance of discretionary functions if the official's acts were objectively reasonable in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent and those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229 (1991). When sued in his or her individual capacity, a government employee is entitled to a presumption of qualified immunity from suit. *Mossey v. City of Galveston,* 94 F.Supp.2d 793, 796 (S.D. Tex. 2000). "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow*, 457 U.S. at 817–18. Because qualified immunity is "an immunity from suit rather than a mere defense to liability,…it is effectively lost if a case is erroneously permitted to go to trial," and consequently, qualified immunity questions should be resolved at the earliest possible state in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991) (per curiam). Immunity protects public officials from the disruption and costs associated with litigation. *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

Because of this public policy, plaintiffs may not engage in discovery until they have supported their constitutional claims with sufficient facts that, if true, would overcome the immunity defense. *See Iqbal*, 556 U.S. at 685-86; *Carswell v. Camp*, 54 F. 4th 307 (5th Cir. 2022) ("When defendants assert qualified immunity in a motion to dismiss, the district court may not defer ruling on that assertion. It may not permit discovery—"cabined or otherwise"—against immunity-asserting defendants before it has determined plaintiffs have pleaded facts sufficient to overcome the defense."); *Winstead v. Box*, 2011 WL 1057558 (5th Cir. 2011) (*citing Wicks v. Miss. State Employment Servs*., 41 F.3d 991, 994 (5th Cir. 1995)).

The availability of immunity is a question of law. *Siegert v. Gilley*, 500 U.S. 226, 231-232 (1991). Courts must determine (i) whether the plaintiff has described a violation of a constitutional right; and (ii) whether the right was "clearly established" at the time of the official's conduct. *Pearson v. Callahan*, 555 U.S. 223, 223-24 (2009). The plaintiff bears the burden of showing that the official violated clearly established law. *Kovacic v. Villareal*, 628 F.3d 209, 212 (5th Cir. 2010). The plaintiff must identify the violation of a "particularized" right. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). A plaintiff may not defeat immunity by describing a "general proposition" of constitutional law, such as a right to due process. *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2084 (2011). The plaintiff must show that the "contours" of the right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Alexander v. Eeds*, 392 F.3d 138, 146 (5th Cir. 2004). This means that "existing precedent" must have placed the constitutional question "beyond debate." *Ashcroft*, 131 S.Ct. at 2083. In addition to identifying a particularized constitutional right, the plaintiff must allege with specificity what each defendant did to violate that right. *See Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994); *Kovacic*, 628 F.3d at 212.

Stua alleges that Conn violated the First Amendment by issuing a criminal trespass warning against him, effectively banning him from College property, to retaliate for Stua's TPIA audits and broadcasting "political protests against college censorship policies." (Dkt. 10, ¶ 67). He claims Conn violated his Fourth Amendment rights by improperly obtaining the warrant that led to his arrest. (Dkt. 10, ¶ 68). The problem is, Stua's "audit activity" and political broadcasts on December 6, 2018 amounted to Stua going up to strangers on the College campus and asking if they wanted to see proof that he was circumcised. (*See* Dkt. 10, ¶¶ 10-20). Stua admits that at least one of these students turned out to be 15 years old. (Dkt. 10, ¶ 19). Exactly what words Stua used in asking strangers if they wanted to see proof that he was circumcised, and whether those strangers would know (as Stua maintains) that the "proof of circumcision" he was referring to was a written "Certificate of Circumcision" that he had apparently secretly slipped under the glass of the circulation desk at the College library (Dkt. 10, ¶¶ 17-18) – and not the far more obvious conclusions that most persons would draw – would obviously be issues to be determined during Stua's criminal trial. The "fraudulent statement" that Stua claims Conn made in the application for the warrant was "[d]uring the making of the video, David Stua induced a minor who is less than eighteen (18) year of age to engage in behavior of a sexual nature by asking the child if he wanted to see his circumcised male genitalia." (Dkt. 10, ¶ 23). But:

- Stua did make a Livestream video on Facebook. (Dkt. 10, ¶ 11)
- Stua did approach a student who was only 15 years old. (Dkt. 10, ¶ 19)
- Stua admits that he was offering to show people "proof" that he was "for circumcision" – apparently referring to what he claims was a "satirical paper" that he had hidden in a different location in the library. (Dkt. 10, ¶ 11).

So, in the end, it come down to how one interprets what was at best an extremely poor joke, and at worst a sexual proposition. Stua's Complaint fails to carry his burden of showing that Conn's arrest of him violated clearly established law. *Kovacic*, 628 F.3d at 212. Qualified immunity is appropriate as a matter of law.

## V. <u>CONCLUSION</u>

For the reasons listed above, Defendant Doug Conn respectfully requests that David Stua's claims against him be dismissed under Rule 12(b)(6), and that the Court grant Defendant Conn such remedies, both at law and in equity, to which he has shown himself entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: /s/ Christopher B. Gilbert
Christopher B. Gilbert
Attorney-in-Charge
State Bar No. 00787535

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6744
Facsimile: (713) 583-7698
cgilbert@thompsonhorton.com

**ATTORNEYS FOR DEFENDANT DOUG CONN**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading has been served on all counsel of record through electronic mail or via the Court's electronic filing system, on August 24, 2026:

David Stua
4217 FM 2021
Lufkin, Texas 75904
christian.tatum8@gmail.com

/s/ Christopher B. Gilbert
Christopher B. Gilbert