FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SEP 25 2026
BY
DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| **DAVID RAY STUA,**<br>**Plaintiff,** | §<br>§ | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **9:26-CV-00419-MJT-CLS** |
| **ALBERT J. CHARANZA, JR.,**<br>**DOUG CONN, and**<br>**JANET LEE REYNOLDS, f/k/a**<br>**JANET R. CASSELS,**<br>**Defendants.** | §<br>§<br>§<br>§<br>§ | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CHARANZA'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 2
II. RESPONSE TO STATEMENT OF THE ISSUES .......... 2
III. ARGUMENT .......... 3
A. This Motion Is Directed at a Superseded Pleading .......... 3
B. In the Alternative, Count IV Should Be Stayed, Not Dismissed, Under *Heck* .......... 3
C. Fraudulent Concealment Tolls Limitations for Counts I, II, and III .......... 5
D. Plaintiff Pleads an Actual Conspiracy Between Charanza and a State Actor .......... 6
E. Plaintiff Adequately Pleads RICO's Elements .......... 8
F. Declaratory Relief Survives With the Underlying Claims .......... 9
IV. CONCLUSION AND PRAYER .......... 9

**TABLE OF AUTHORITIES**

**Cases**

*Boyle v. United States*, 556 U.S. 938 (2009) .......... 8
*Borderlon v. Peck*, 661 S.W.2d 907 (Tex. 1983) .......... 6
*Ciminelli v. United States*, 598 U.S. 306 (2023) .......... 8
*Crowe v. Henry*, 43 F.3d 198 (5th Cir. 1995) .......... 8
*Dennis v. Sparks*, 449 U.S. 24 (1980) .......... 3, 6, 7
*Heck v. Humphrey*, 512 U.S. 477 (1994) .......... 3, 5
*Holmberg v. Armbrecht*, 327 U.S. 392 (1946) .......... 5
*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) .......... 6
*Lewis v. Danos*, 83 F.4th 948 (5th Cir. 2023) .......... 9
*Medical Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025) .......... 9
*Polk County v. Dodson*, 454 U.S. 312 (1981) .......... 6

*Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000) ....................................................3
*Rotella v. Wood*, 528 U.S. 549 (2000) ....................................................................5
*Sekhar v. United States*, 570 U.S. 729 (2013) .......................................................8
*Tower v. Glover*, 467 U.S. 914 (1984) ...................................................................6
*Wallace v. Kato*, 549 U.S. 384 (2007) ....................................................................4

**Statutes and Rules**

42 U.S.C. § 1983...............................................................................4,5,6
Fed. R. Civ. P. 15(a) ........................................................................................ 3
E.D. Tex. Local Rule CV-7(a)(1) ......................................................................... 3

## I. INTRODUCTION

Defendant Charanza's Motion to Dismiss (Dkt. 16) is directed entirely at Plaintiff's original Complaint (Dkt. 10). It is not directed at, and does not account for, the First Amended Complaint that Plaintiff has contemporaneously moved for leave to file. That amendment adds a defendant, reworks the RICO predicate act around a specific, sworn false certification, and pleads with particularity a fraudulent-concealment timeline culminating in a document Plaintiff did not obtain until August 28, 2026 — a document that directly contradicts the very representation Defendant Cassels made to this Court's sister tribunal on the day of Plaintiff's plea. Every argument in Dkt. 16 must be evaluated against that record, not against a pleading Plaintiff has already sought leave to supersede.

Plaintiff respectfully submits that the orderly course is to resolve the pending Motion for Leave to Amend first. In the alternative, and without waiving that request, Plaintiff shows below that each of Defendant Charanza's arguments fails even measured against the operative pleading as it will read once amended.

## II. RESPONSE TO STATEMENT OF THE ISSUES

Pursuant to E.D. Tex. Local Rule CV-7(a)(1), Plaintiff responds to Defendant Charanza's statement of the issues (Dkt. 16 at 3) as follows: (1) whether *Heck v. Humphrey* bars every claim against Charanza — no, as to Counts I and II, which do not require invalidation of Plaintiff's

conviction, and Count IV should be stayed, not dismissed; (2) whether Plaintiff's claims are time barred — no, because Plaintiff's claims did not accrue, or are equitably tolled, until August 28, 2026; (3) whether Charanza is a state actor or conspired with one — yes, Plaintiff pleads specific, dated joint conduct sufficient under *Dennis v. Sparks*, 449 U.S. 24 (1980); (4) whether Plaintiff states a RICO claim — yes, as reworked in the First Amended Complaint; and (5) whether declaratory relief survives — yes, to the extent any underlying claim survives.

## III. ARGUMENT

### A. This Motion Is Directed at a Superseded Pleading

Rule 15(a)(2) directs that leave to amend be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiff's proposed First Amended Complaint ("FAC"), filed with this response, cures the pleading deficiencies Dkt. 16 identifies to the extent they are curable, narrows the RICO enterprise to Defendants Charanza and Reynolds, and pleads the concealment timeline set out below with the particularity Rule 9(b) requires. Because a motion to dismiss an original complaint is ordinarily rendered moot by the filing of an amended complaint, this Court should resolve Plaintiff's Motion for Leave to Amend first and deny Dkt. 16 as moot. Plaintiff addresses the merits below solely in the alternative.

### B. In the Alternative, Count IV Should Be Stayed, Not Dismissed, Under Heck — and Heck Does Not Reach Counts I and II

Defendant Charanza is correct that Count IV depends in part on the invalidity of Plaintiff's conviction, and that *Heck v. Humphrey*, 512 U.S. 477 (1994), applies whether or not Plaintiff remains in custody. *Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000). Plaintiff does not dispute that holding. The correct remedy under it, however, is a stay, not dismissal. Because Plaintiff's Article 11.07 application remains pending in the 159th District Court and could result in the conviction's invalidation, Count IV has simply not yet accrued; the limitations period has not begun

to run, and dismissing the claim now — rather than staying it — risks foreclosing it if the state proceeding resolves in Plaintiff's favor after an intervening limitations deadline. See *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (a stay, not dismissal, is the appropriate course where a Section 1983 claim's success would demonstrate the invalidity of an outstanding conviction).

Counts I and II stand on a different footing that Dkt. 16 does not address, because the FAC's predicate act theory did not exist in the original pleading it attacks. The FAC now pleads two predicate acts of wire fraud, each by the same mechanism: Defendant Charanza's electronic transmission of a sworn attorney fee voucher, via the Texas county eFile system, certifying billed time as "reasonable [and] necessary to provide effective assistance of counsel," upon which Angelina County relied in disbursing public funds. FAC PP 32-33. The first transmission, on August 16, 2022, certified time in fact spent managing Charanza's own ineffective-assistance grievance and disciplinary exposure in the three days preceding Plaintiff's plea. FAC PP 19-20, 32(a). The second, on April 27, 2022, certified time spent meeting with Defendant Reynolds and a community supervision officer to review GPS records and research internet restrictions for the prosecution's administrative benefit, not Plaintiff's defense. FAC P 32(b). Whether either certification was false does not require this Court, or any court, to determine that Plaintiff's underlying conviction was invalid; it requires only a determination of what the billed time was actually spent on — a factual question entirely collateral to the validity of the plea itself. A civil RICO judgment resting on either predicate would not "necessarily imply the invalidity" of Plaintiff's conviction within the meaning of *Heck*, 512 U.S. at 487, any more than a legal-malpractice or fee-dispute judgment against a criminal defense attorney would. Heck accordingly does not bar Counts I and II.

**C. Fraudulent Concealment Tolls Limitations for Counts I, II, and III**

Dkt. 16 argues that every act attributable to Charanza occurred between his June 9, 2020 appointment and the June 10, 2022 plea, and that both the two-year Section 1983 period and the four-year RICO period have therefore run. Dkt. 16 at 7-8. That argument addresses only the original Complaint. The FAC pleads a materially different and controlling fact: Defendant Cassels represented to the state court, on the record, on June 10, 2022, that the complaining witness's family "prefers that the matter not go forward due to the public nature of court proceedings." FAC P 22. In fact, internal case-management notes — dated March 17-18, 2021, and again August 17, 2021, months before the very superseding indictment that added the counts underlying that representation — documented that the family had already communicated their unwillingness to proceed for entirely different reasons. FAC P 25. Those notes did not appear on the discovery log furnished to Plaintiff during the criminal proceeding. FAC P 25. On December 29, 2023 — eighteen months after the plea, and while Defendant Reynolds was still District Attorney — Reynolds and Charanza jointly filed an Agreed Motion for Nunc Pro Tunc purporting to correct the discovery log, and the resulting amended log still omitted the same notes. FAC P 27. Plaintiff did not obtain the actual notes until August 28, 2026, when a successor District Attorney's office produced them in response to a request broad enough to have covered them since November 2024. FAC PP 24-26.

This is a fraudulent-concealment record, not a discovery-of-the-pattern argument. *Rotella v. Wood*, 528 U.S. 549 (2000), on which Dkt. 16 relies, holds only that a civil RICO claim accrues upon discovery of the injury, not upon discovery of the full pattern of racketeering activity; it says nothing about tolling based on a defendant's own affirmative act of concealment. See *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (equity tolls limitations where a party has concealed material facts). Nor does *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997), assist Charanza. Klehr forecloses

using one timely act as a bootstrap to revive a pattern built entirely of stale acts; it does not address a plaintiff who pleads, as Plaintiff does here, that the defendants' own affirmative concealment is what prevented timely discovery of the pattern in the first place. Plaintiff exercised reasonable diligence throughout: he pursued the same underlying question through public-information requests to two successive District Attorneys, obtained a partial, misleading answer in December 2024, and did not stop until the actual notes surfaced in August 2026. FAC PP 24-26. Under these facts, Counts I, II, and III did not accrue, or are equitably tolled, until August 28, 2026 — squarely within every applicable limitations period. See *Borderlon v. Peck*, 661 S.W.2d 907 (Tex. 1983) (equitable tolling for fraudulent concealment).

**D. Plaintiff Pleads an Actual Conspiracy Between Charanza and a State Actor**

Dkt. 16 correctly states the general rule of *Polk County v. Dodson*, 454 U.S. 312, 325 (1981): defense counsel, appointed or retained, does not act under color of state law when performing the ordinary functions of representation. Plaintiff does not contend otherwise. But Polk County itself preserves the conspiracy exception the Supreme Court recognized the same term in *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980): a private party who conspires with a state actor to violate constitutional rights acts under color of state law for purposes of that conspiracy, whatever the private party's ordinary function might otherwise be. The FAC pleads exactly that kind of specific, dated, joint conduct — not a conclusory label; accord *Tower v. Glover*, 467 U.S. 914, 923 (1984) (appointed counsel is not immune from Section 1983 liability for intentional misconduct undertaken under color of state law through conspiracy with state officials).

First, on February 22, 2022, Charanza personally asked Defendant Reynolds, then the elected District Attorney prosecuting Plaintiff, to delay consideration of Plaintiff's dispositive Fourth Amendment suppression motion until after Charanza's own judicial primary election, and Reynolds agreed in writing. FAC P 16. That is not an attorney performing an ordinary defense

function; it is an attorney and a prosecutor jointly agreeing to withhold a ruling from the court for the personal, political benefit of defense counsel, at the direct expense of the client both were nominally opposing each other on behalf of.

Second, on June 7, 2022 — three days before Plaintiff's plea — Charanza met personally with the presiding judge of the 159th District Court and Defendant Reynolds regarding an ineffective-assistance grievance Plaintiff had filed against Charanza, without Plaintiff present. FAC P 20. An attorney coordinating with the prosecutor and the court about his own client's complaint against him, outside that client's presence, on the eve of a plea, is not "entering pleas, moving to suppress evidence, or cross-examining witnesses" within the meaning of Polk County, 454 U.S. at 320; it is joint action with the State against the client's interest.

Third, on December 29, 2023 — eighteen months after the representation ended — Charanza and Reynolds jointly filed the Agreed Motion for Nunc Pro Tunc described above, which continued to omit the same exculpatory notes from the discovery record. FAC P 27. This is a continuing joint act, not an isolated one, and it occurred after Charanza's representation of Plaintiff had concluded, when no privilege or ordinary defense function could explain his continued coordination with the prosecutor's office regarding Plaintiff's case file.

These three specific, dated instances of joint conduct — an agreement to delay a ruling for political benefit, a private meeting with the court and the prosecutor about the client's own grievance, and a joint post-representation filing that concealed exculpatory material — are precisely the kind of factual allegations *Dennis v. Sparks* requires and Dkt. 16 contends are absent. They are present, and they are pled with dates, participants, and documentary sources throughout the FAC.

**E. Plaintiff Adequately Pleads RICO's Elements**

Dkt. 16's RICO argument (Dkt. 16 at 10-16) is directed at predicate-act theories the FAC no longer advances. Plaintiff does not replead Hobbs Act extortion of "civil standing, liberty, and right to

trial," which *Sekhar v. United States*, 570 U.S. 729 (2013), forecloses, and does not replead a "right to control" theory of mail or wire fraud, which *Ciminelli v. United States*, 598 U.S. 306 (2023), forecloses. The FAC's sole predicate act is the wire-fraud transmission of Charanza's falsely certified attorney fee voucher, described in Part III.B above. FAC P 32.

The enterprise element is satisfied under *Boyle v. United States*, 556 U.S. 938, 946 (2009), which requires only a common purpose, a relationship among the associates sufficient to pursue it, and longevity sufficient to permit that pursuit — not a formal hierarchy or an ascertainable decision-making structure separate from the pattern itself. The common purpose alleged is the suppression of Plaintiff's TPIA activity; the relationship is the specific joint conduct described in Part III.D above; and the longevity spans the entirety of Charanza's representation and beyond, through the December 2023 filing. FAC PP 9-13, 31.

Defendant Charanza is also correct that the Fifth Circuit requires an enterprise with an existence separate and apart from the pattern of racketeering activity itself, and a continuing unit functioning through some mechanism of control. *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). The Enterprise alleged here satisfies that requirement: it is not defined by the single predicate act itself, but by the ongoing relationship described in Part III.D above — an agreement to delay judicial rulings for political benefit, private coordination with the court and the prosecutor regarding Plaintiff's own grievance, and continued joint conduct concerning Plaintiff's case file eighteen months after the representation ended. FAC PP 16, 20, 27. That relationship existed, and continued to function, independently of and before the specific voucher transmission that constitutes the charged predicate act, distinguishing it from an enterprise that is nothing more than the predicate act by another name.

The injury element is likewise satisfied and does not suffer the proximate-cause defect identified in *Lewis v. Danos*, 83 F.4th 948 (5th Cir. 2023). Plaintiff's injury is not derivative of any injury to Angelina County; Plaintiff was the intended beneficiary of the certified legal services, did not receive the services certified as rendered on his behalf during the three days preceding his plea, and lost that representation at the precise moment it was most critical. FAC P 34. That is a direct, not derivative, injury proximately caused by the false certification Plaintiff's property injuries include, among others, approximately $20,000 in tools and equipment rendered inaccessible or lost, and the destruction of the primary structure on Plaintiff's residence in an October 2021 fire occurring during Plaintiff's continued pretrial detention, which reduced the county-appraised improvement value of that structure by approximately $35,000. FAC ¶ 34. That these injuries are bound up with Plaintiff's loss of liberty during that detention does not defeat RICO standing: a civil RICO plaintiff may recover for business or property harm connected to a personal injury.*Medical Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025).

**F. Declaratory Relief Survives With the Underlying Claims**

Dkt. 16's argument that declaratory relief fails with the underlying claims is derivative of its other arguments and fails for the same reasons. To the extent any claim above survives, the request for declaratory relief tied to that claim survives with it.

## IV. CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant Charanza's Motion to Dismiss (Dkt. 16) as moot in light of the pending Motion for Leave to Amend, or, in the alternative, deny it on the merits set forth above, and grant Plaintiff such other and further relief to which he may be justly entitled.

Respectfully submitted,

David Ray Stua, Pro Se
4217 FM 2021
Lufkin, Texas 75904
(936) 707-3192
christian.tatum8@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of September 2026, a true and correct copy of the foregoing was served on all counsel of record by electronic mail to Lane Haygood, counsel for Defendant Charanza, and Christopher Gilbert, counsel for Defendant Conn.

David Ray Stua

*NOTE ON CERTIFICATE OF CONFERENCE: Under E.D. Tex. Local Rule CV-7(i), the "meet and confer" and "certificate of conference" requirements do not apply to pro se litigants. No certificate of conference is therefore required for this Motion. Plaintiff nonetheless advised counsel for both Defendants of his intent to file this Motion as a matter of professional courtesy.*